**SANER–RAGLEY LUMBER CO. et al. v. SPIVEY et al. (No. 634.)\***

(Court of Civil Appeals of Texas. Beaumont.·
June 30, 1923. Rehearing Denied
Oct. 10, 1923.)

**1. Judgment ⬤⇒18(2)—Petition subject to general demurrer cannot afford basis for judgment.**

A petition which is subject to general demurrer will not support a judgment in favor of plaintiffs for any .amount.

**2. Pleading ⬤⇒34(3)—As against general demurrer petition will be construed favorably to pleader as stating cause of action.**

As against a general demurrer a petition will be construed most favorably in favor of plaintiff, and all reasonable intendments will be indulged in its favor as stating a cause of action, and if it can be gleaned from the petition as a whole that a cause of action in favor of the plaintiff for any amount is stated a general demurrer cannot be sustained.

**3. Pleading ⬤⇒228 — Objection to indefinite statements and conclusions of pleader may be raised only by special exception.**

Such defects in a pleading as indefinite and uncertain statement of facts and conclusions drawn by the pleader and stated as facts are reached not by a general demurrer but by special exception.

**4. Landlord and tenant ⬤⇒48(1)—Petition in action for damages for breach￫of contract held not subject to general demurrer.**

In an action for damages for breach of a contract to permit plaintiff to cup defendant's timber, petition *held* not subject to general demurrer, but sufficient as a basis for the judgment rendered thereon.

**5. Landlord and tenant ⬤⇒48(1)—Allegations held sufficient as against general demurrer to admit proof of special damages.**

Where, in an action for breach of contract to permit plaintiff to cup defendant's timber, the petition alleged that defendant's breach prevented plaintiff from continuing his turpentine business for the year 1915, and to cause him practically the loss of said year to his business, as well as to incur great and useless expenditures to his damage on said accounts in the sum of $10,000, *held* that conceding that the item of $10,000 was for special damages the allegations were sufficient as against ￫a general demurrer to admit proof by plaintiff in that connection, and sufficient to sustain a judgment as to that item.

**6. Landlord and tenant ⬤⇒48(2) — Whether item of damages for breach of contract general or special, allegations relating thereto held good as against general demurrer.**

Where, in an action for breach of contract to permit plaintiff to cup defendant's ·timber, the petition alleged that defendant's breach of the contract caused plaintiff to lose the value and reasonable profits of the rights and privileges which would have accrued to him under his contract but for defendant's breach, to his damage in the further sum of $65,000, *held* that, if the item of $65,000 was for general

damages, the allegations were sufficient as against a general demurrer, and if the item was for special damages it was specially pleaded, and the facts stated in that connection, though very meagerly pleaded and indefinitely, were sufficient as against a general demurrer to warrant a recovery for so much of that item as might be sufficiently sustained by evidence.

**7. Landlord and tenant ⬤⇒24(1) — Contract giving one right to turpentine trees held not unilateral.**

An agreement permitting plaintiffs for the consideration and upon the terms stated to cup for turpentine a tract of timber at that time owned by defendants, *held* not unilateral since it did not leave it optional with the parties as to whether the contract should be complied with.

**8. Landlord and tenant ⬤⇒24(3) — Contract giving right to cup timber held not void for lack of description.**

An agreement between plaintiff and defendant permitting plaintiff for a stated consideration and period to cup the pine timber on a tract of land then owned by defendant, and upon the conditions stated, *held* not void for lack of description of timber to be cupped.

**9. Evidence ⬤⇒460(7)—Contract and allegations of petition describing timber to be cupped held sufficient to admit proof of tract or tracts of land and timber contemplated.**

Where, in an action for damages for breach of contract to permit plaintiff to cup timber, the petition alleged a contract whereby defendant for a stated consideration permitted plaintiff to cup pine timber on a tract of land then owned by defendant, and that the land consisted of 10,700 acres in P. county, Tex., *held* that the allegations as to descriptions were not insufficient, and that it was permissible under the contract and the petition to admit proof of the tract or tracts of land and timber contemplated by the parties.

**10. Judgment ⬤⇒17(2), 134—Judgment against defendant held not one by nihil dicit, but in effect a default judgment save in precluding attack on citation.**

Where, in an action in J. county for unliquidated damages, defendant after due service of citation filed only a plea of privilege to be sued in P. county which plea was sustained and the cause transferred to P. county, but on the trial in the latter county defendants did not appear nor file any other pleading or motion, and judgment was rendered against them without their knowledge until after the court had adjourned, and their only remedy was by writ of error which they pursued, *held* that the judgment against them was not one by nihil dicit, and that its legal effect was no greater than that of an ordinary judgment by default, except that defendants could not question the sufficiency of the citation as they could in case of an ordinary default judgment.

**11. Appeal and error ⬤⇒882(11) — Judgment ⬤⇒134—Default judgment in action for unliquidated damages does not preclude defendant from attacking amount of judgment on appeal or writ of error.**

Generally a default judgment admits the cause of action against the defendant, but

where the suit is based upon an unliquidated and uncertain demand for damages the default judgment does not admit that plaintiff is entitled to recover the full amount sued for to the extent of precluding defendant on appeal or by writ of error from attacking the amount as not being supported by the evidence.

**12. Landlord and tenant &#8660;48(2)—Evidence in action for breach of contract held insufficient to sustain judgment for $75,000.**

In an action for breach of contract to permit plaintiff to cup turpentine from defendant's timber, evidence *held* insufficient to sustain judgment of $75,000, based on an alleged item of damages of $10,000 for loss of year's work in turpentine business and expenses incurred in removing plaintiff's equipment and an item of $65,000 claimed as lost profits.

**13. Appeal and error &#8660;987(1)—Rule that appellate court will not usually disturb verdict reasonably supported by evidence applies usually in contested actions.**

The rule that the appellate court will not disturb a verdict on a judgment reasonably supported by the evidence is usually applied in contested cases in the trial court where the facts upon which the verdict and judgment rest are stated pro and con, and the jury or court trying the case have confronted the witnesses and observed their manner of testifying and have passed upon their credibility, since in such instances the jury have also given such weight to the facts testified to as was deemed proper.

**14. Pleading &#8660;34(2)—General allegations controlled by special allegations; petition to be construed as whole.**

General allegations are controlled by special allegations touching the same material facts, and the petition is to be construed as a whole.

**15. Judgment &#8660;252(3)—Pleading asking for joint and several judgment against both defendants held to assert liability against codefendant only in event he was not authorized to act for defendant company.**

Where plaintiff alleged he contracted with defendant company through codefendant R., as the authorized representative of defendant company, and that defendant breached the contract but that if codefendant was not authorized to contract as he did, he was personally liable, and prayed for judgment against defendants jointly and severally, *held* that plaintiff asserted liability against R. individually only in the event he did not have authority to act for defendant company.

**16. Judgment &#8660;252(3) — Judgment against both defendants held inconsistent with pleadings.**

Where the pleadings in action for breach of contract made with defendant through R., its authorized representative as alleged, sought to fix liability on defendant company and on codefendant R., only in the event R. was not authorized to contract with plaintiff, and the judgment in effect stated R. had such authority, a judgment against both *held* not supported by the pleadings.

Error from District Court, Polk County; J. L. Manry, Judge.

Action by J. H. Spivey against the Saner-Ragley Lumber Company and another, in which on the death of plaintiff, his heirs were substituted plaintiffs. Judgment was rendered for plaintiffs, and defendants applied to the Court of Civil Appeals for writ of error, which court dismissed the application (230 S. W. 878), and defendants brought error to the Supreme Court, which reversed the judgment of the Court of Civil Appeals, and remanded the cause to that court for disposition (238 S. W. 912). Judgment of trial court reversed, and cause remanded.

Dean & Humphrey, of Huntsville, P. R. Rowe, of Livingston, and Chas. L. Black, of Austin, for plaintiffs in error.

O. S. Parker and Smith & Crawford, all of Beaumont, and S. H. German, of Austin, for defendants in error.

HIGHTOWER, C. J.    This was a suit originally filed by J. H. Spivey, as plaintiff, against Saner-Ragley Lumber Company, a private corporation, and W. G. Ragley, as defendants, in the district court of Jefferson county in which the plaintiff sought to recover damages against defendants in the sum of $75,000, alleged to have been sustained in consequence of a breach of contract entered into between the parties, by the terms of which the plaintiff was to be permitted, for a certain consideration stated, to cup for turpentine a tract of pine timber owned by defendant Saner-Ragley Lumber Company in Polk county, Tex., covering some 10,700 acres of land. Defendants were duly served with citation in the case, and in due time appeared and filed their plea of privilege, claiming their domicile in Polk county, Tex., and prayed that the venue be changed to the district court of that county. The plea of privilege was heard and sustained by the district court of Jefferson county, and an order made changing the venue of the suit to Polk county, and directing the clerk to make up the proper transcript and forward the same, together with the original papers in the cause, to the clerk of the district court of Polk county, which was done, and the cause was duly filed in the district court of Polk county. After the order changing the venue to Polk county was entered, but before the transcript was made up and forwarded to Polk county, the plaintiff J. H. Spivey died, but the cause, nevertheless, was placed on the docket of the district court of Polk county in the name of J. H. Spivey as plaintiff, and the Saner-Ragley Lumber Company and W. G. Ragley as defendants.

At the first term of the district court of Polk county, after the cause had been filed in that court, the death of the plaintiff J. H.

Spivey was duly suggested to the court, and a motion was filed by J. H. Spivey's heirs, praying that they be permitted to prosecute the suit as plaintiffs, and this motion was granted, and Spivey's heirs were substituted for the original plaintiff, J. H. Spivey, and, as such substituted plaintiffs, they prosecuted this cause to judgment.

The defendants, Saner-Ragley Lumber Company and W. G. Ragley, never at any time or place filed any further answer, pleading, or motion in this cause than their said plea of privilege, and never at any time further appeared in the case, and no notice was given them or either of them that Spivey's heirs had been substituted as plaintiffs in the case, other than such notice as they were bound to take, if any, as a matter of law.

At the December term, 1920, of the district court of Polk county, the case was called for trial on its merits, and neither of the defendants appearing, and there being no answer on file by either of them to the merits of the cause of action, the case proceeded to trial before the court without a jury, and judgment was rendered in favor of the substituted plaintiffs as the heirs of J. H. Spivey, for $75,000, the full amount sued for, one-half of which was apportioned to the attorneys for the plaintiffs.

After the court had adjourned for the term and after the judgment against them had become final, the plaintiffs at once caused an execution to issue upon the judgment in their favor, which was placed in the hands of the sheriff of Polk county, and he called upon defendants to point out property to be levied on in satisfaction of the execution, and this was the first notice that defendants had that the cause had gone to trial and judgment rendered against them.

On being notified of the judgment against them, defendants sued out a writ of error to this court, by which they sought to bring the judgment here for revision, and, after the record had been filed in this court, a motion was filed by counsel for plaintiffs, praying this court to dismiss the writ of error for want of jurisdiction. It was asserted by counsel for the motion that this court had no jurisdiction to entertain the writ, because the petition for the writ and also the bond were so defective in vital respects as to confer no jurisdiction upon this court. The motion to dismiss was ably briefed by counsel for the plaintiffs, and was answered and fully and ably briefed by defendants and this court, in view of the nice legal questions involved and the large amount of the judgment, set the motion down for hearing, and invited oral argument upon it, which was had, and, after due consideration, this court sustained the motion, and dismissed the writ of error. The opinion of this court in that connection will be found reported in 230 S. W. 878.

Plaintiffs in error thereupon applied to the Supreme Court for writ of error, challenging our action on the motion, and the Supreme Court granted the writ, and thereafter rendered its judgment reversing our judgment on the motion, and remanded the cause back to this court for disposition on the merits. 238 S. W. 912. We shall refer throughout this opinion to plaintiffs in error as appellants, and to defendants in error as appellees.

Appellants' brief presents numerous assignments of error, for which they claim the judgment should be reversed, but we shall not refer to all of them specifically, nor in their numerical order, because to do so would carry this opinion to an unreasonable length, without any necessity therefor.

In view of the nature of some of the assignments of error, it is proper, and perhaps necessary, to let this opinion reflect the petition of appellees in full, and we, therefore, at this point copy it. After the marginal portion, the petition is as follows:

"Comes now J. H. Spivey, plaintiff herein, and complaining of Saner-Ragley Lumber Company, a Texas corporation, with its domicile and principal office at Carmona, Polk county, Tex., hereinafter for convenience called the company, and of W. G. Ragley, whose residence is to plaintiff unknown, but who is temporarily to be found in Polk county, Tex., respectfully shows:

"(1) That on and immediately prior to November 28, 1914, the said company, acting through the defendant, W. G. Ragley, who was at that time and now is treasurer and general manager of said company and its managing director, negotiated with this plaintiff, J. H. Spivey, a resident of Jefferson county, Tex., who was then engaged in the turpentining operations at and in the vicinity of Voth in Jefferson county, Tex., with a view to his removing his plant and equipment to the property owned and controlled by the defendant company in Polk county, Tex., represented by the defendants to aggregate approximately ten thousand seven hundred (10,700) acres of virgin, long-leaf yellow pine, and continue operating his turpentine business upon said timber last mentioned under arrangement which would produce a substantial revenue to the said defendant company and to the defendant, W. G. Ragley, the principal stockholder, managing director, who was, at that time, and still is, the treasurer and general manager of said company, such negotiations culminating in a contract being duly executed in Jefferson county Tex., on, to wit, November 29, 1914, by and between this plaintiff and the defendant company, acting by and through the defendant, W. G. Ragley, aforesaid, same being in words and figures substantially as follows, to wit:

" 'Agreement entered between the Saner-Ragley Lumber Company of Carmona, Tex., and J. H. Spivey of Voth, Tex., the Saner-Ragley Lumber Company, party of the first part, enters into an agreement with J. H. Spivey, party of the second part; J. H. Spivey, party of the second part agrees to pay the Saner-Ragley Lumber Company party of the first part, six

cents (6¢) per cup per year for the first year. J. H. Spivey agrees to put in from 50,000 to 75,000 cups the first year or the coming season of 1915. J. H. Spivey agrees to pay on the 20th day of January, 1915, 3 cents per cup in cash, the remaining 3 cents 60 days from date of first payment. The Saner-Ragley Lumber Company does not agree to have the timber cupped over two years or a two years lease, unless otherwise agreed to. At the end of the season the Saner-Ragley Lumber Company has a right to take over timber that has been turpentined at the end of season, and replace with other timber that is owned by the Saner-Ragley Company. J. H. Spivey agrees to leave 40 per cent. of the tree left alive between the cups as an average. The lumber company agrees to sell all parties that are working for Mr. Spivey all goods that are in the company's store at the same prices as they do' their own men.· Mr. Spivey agrees to settle for all bills at the first of each month less 10 per cent. The additional timber to be turpentined each season will be on the same basis as set out above, the amount for each season will be fixed later. This covers the entire tract of timber owned by the Saner-Ragley Lumber Company. J. H. Spivey agrees not to put in a store to handle goods. Saner-Ragley Lumber Co., per W. G. Ragley, Party of the First Part. J. H. Spivey, Party of the Second Part. This agreement entered into this the 28th day of November, 1914.'

"It was agreed by the parties to the contract aforesaid, and the said contract contemplated, that this plaintiff should have the right to continue his turpentining operations until all of the timber aforesaid had been so turpentined for at.least two years, with the exception in said contract noted.

"(2) Plaintiff would further represent that by said contract he acquired valuable rights, and in good faith proceeded, at great expense to himself, to prepare and carry out said contract according to its terms and agreeable to all the understanding between the parties governing same, but that the defendants, and each of them, wrongfully and without any just cause, on or about, to wit, February 1, 1915, undertook to repudiate said contract on the alleged ground and claim that the said W. G. Ragley had no authority to bind the company thereby and the defendants, and each of them, have ever since, notwithstanding the insistence on the part of the plaintiff that he should be allowed to carry out the terms of his contract aforesaid, prevented this plaintiff from so doing, and from acquiring any of the benefits secured to him by the terms of said contract whereby this plaintiff was, without fault on his part, prevented from continuing his turpentine business for the year 1915, and to cause him practically the loss of said year to his business, as well as causing him to incur great and useless expense to his damage on said accounts in the sum of ten thousand dollars ($10,000), as well as to cause him to lose the value and reasonable profits of the rights and privileges which would have accrued to him under the terms of his contract aforesaid but for the breach thereof by the said defendants, to his damage in the further sum of sixty-five thousand dollars, ($65,000).

"(3) Plaintiff would further show that according to his best information and belief there was no truth in, and the facts did not support, the defendant's contention aforesaid that the defendant W. G. Ragley did not have authority to bind the company by his execution of the contract aforesaid, but that same was an afterthought, inspired by the fact that shortly after the said contract was entered into, and before its breach hereinbefore complained of, a certain large naval stores corporation, doing an interstate business, offered the defendants a large advance in price for the privileges conferred upon plaintiff by the contract aforesaid,· the value of such turpentine privileges having in the meantime advanced, by reason of the condition of the market and demand for naval stores products, and therefore the defendants undertook to dispose of the rights which belonged to this plaintiff under the contract aforesaid to such corporation for an advance of approximately, to wit, sixty-five thousand dollars ($65,000) over the price for which plaintiff was to have secured such privileges under the terms of his contract, and the defendants wrongfully permitted said corporation last mentioned to go into possession of its timber aforesaid, and is still allowing said corporation to proceed with the work of turpentining said timber thereby reaping the fruits and benefits thereof, which right belonged to this plaintiff under the terms of his contract aforesaid, and thereby preventing this plaintiff from securing to himself his rights by enforcing specific performance of the contract aforesaid, and leaving to this plaintiff no other relief but this action for his damages so wrongfully sustained.

"(4) This plaintiff says that at all times he was ready, able to, and willing to comply with the terms of his contract, including the payment of the amounts due by the terms thereof, on January 20, 1915, and 60 days thereafter, which payment he offered to make to said W. G. Ragley, defendant, and treasurer and general manager of the defendant company, in Beaumont, Jefferson county, Tex., where it was agreed such payments should be made. That such payment was tendered by this plaintiff promptly, and full performance of said contract thereafter, from time to time, tendered by this plaintiff with insistence, but refused by the defendants at all times.

"(5) Plaintiff would further show that the defendant, W. G. Ragley, was, at the time of the negotiations aforesaid and of the execution of the contract hereinbefore referred to, the treasurer and general manager of the defendant company, its principal stockholder and member of its board of directors, and, in fact, its managing director, purporting to have the authority to act in all such matters with binding force upon the defendant company, and he was held out by said company as having such authority, and did at that time, as he has, at all times during the life of the defendant company, exercised such power and authority, as this plaintiff believes and alleges, rightfully and legally.

"But, if it should be determined otherwise and that defendant company was not bound and is not bound by the contract so entered into in its behalf by and through the defendant, W. G. Ragley, then by reason of the premises and the facts and conditions surrounding the negotiations leading up to and the execution of said contract, and the acts and representations of the defendant Ragley in connection therewith,

this plaintiff says that the act of the said Ragley in so contracting for and in behalf of the defendant company, carried with it an implied warranty of his authority to bind thereby the said defendant company, and if he did not by his act so bind the defendant company, he the said defendant, W. G. Ragley, is personally and individually bound thereby, and liable for all the damages accruing to this plaintiff by reason of the breach of said contract aforesaid.

"Wherefore, premises considered, plaintiff prays that the defendants, and each of them, be duly cited in the terms of the law to appear herein at the next regular term of this honorable court and answer this petition, and that upon final hearing hereof, this plaintiff have judgment against the defendants, and each of them, jointly and severally, for the full amount of his damages aforesaid in, to wit, the sum of seventy-five thousand dollars ($75,000), together with all costs in this behalf expended, and for all such other relief, both general and special, as this plaintiff may be entitled to receive either at law or in equity, this plaintiff will ever pray as in duty bound."

(Signed by counsel.)

[1, 2] Appellants, by their first six assignments of error, which are grouped and submitted together and followed by many propositions, attack the judgment on the ground, substantially, that it has no basis in the appellees' petition. In this connection, appellants contend, among other things, that the petition as a whole, is subject to general demurrer, and cite numerous authorities holding, and properly so, that a petition which is subject to general demurrer will not afford the basis for a judgment in favor of the plaintiff for any amount. This court has, on a number of occasions, held that a petition which is subject to general demurrer will not support a judgment in favor of the plaintiff for any amount, and we agree, of course, with appellants' proposition that a petition so defective would not afford the basis for this judgment. We cannot agree, however, with appellants' contention that the petition in this case was subject to general demurrer. It is an elementary rule in this state, at least, and needs no citation of authority at our hands, that, as against a general demurrer, a petition will be construed most favorably in favor of the plaintiff, and all reasonable intendments will be indulged in its favor as stating a cause of action, and if it can be gleaned from the petition as a whole that a cause of action in favor of the plaintiff for any amount is stated, a general demurrer cannot be sustained.

[3, 4] It may be, and is frequently the case, that a petition is indefinite and uncertain in the statement of facts upon which the plaintiff depends for recovery, and may consist largely of conclusions drawn by the pleader and stated as facts, but such defects as these in a petition are not reached by a general demurrer, but may only be successfully challenged by special exception; and in this case many of the propositions advanced by appellants under these assignments challenge the petition in respects in which it could only be reached by special exception. Without discussing this point at further length, we hold that the petition of J. H. Spivey, as originally filed, and which was adopted by the substituted plaintiffs, and which we have copied above, was not subject to a general demurrer, and, therefore, was sufficient as a basis for the judgment in this case.

[5, 6] Some of the propositions under these assignments make the point that all the damages sued for by appellees as presented by the petition are special damages, as that term is understood in law, and that being special damages the facts in detail warranting their recovery must have been stated, and that this was not done, either as to the item of $10,000 or as to the $65,000 item, and that, therefore, the judgment is without support in the appellees' petition. It may be conceded, and we think it is true, that the $10,000 item of damages, as claimed in the petition, is for special damages, and, if so, the allegations of the plaintiff in that connection are sufficient, as against a general demurrer, to admit proof by the plaintiff in that connection, and as far as proved are sufficient to sustain a judgment as to that item. As to appellants' contention that the $65,000 item of damages stated in the petition being a claim for special damages, it is unnecessary for this court to determine, though we are inclined to the view that the claim as to that item is not one for special damages, but for general damages. It is unnecessary that we should enter into a discussion of the distinction between general and special damages, or to here determine whether this item of damages is special or general; for if it be general damages, the petition in that connection is good as against a general demurrer, and if it be special damages, we hold that it is specially pleaded, notwithstanding appellants' contention to the contrary, and that the facts stated in that connection, though very meagerly and indefinitely, are sufficient, as against a general demurrer, to warrant a recovery for so much of that item as might be sufficiently sustained by evidence.

[7] Under these assignments, appellants advance a further proposition that the contract was null and void, and incapable of specific performance, and that there could be no damages for its breach, because the contract, as we have shown it, is unilateral, in that neither of the parties bound himself to do anything under the contract, but that it was left optional with both, or at least with one of them, as to whether the contract should be complied with. We do not concur in this contention. We think it is reasonably clear from the contract itself that the Saner-Ragley Lumber Company agreed

to permit Spivey, for the consideration stated, and upon the terms and conditions stipulated, to cup for turpentine a tract of timber 'at that time owned by them, and that Spivey agreed that he would, cup such timber and pay therefor the consideration stated in the contract and upon the terms and conditions therein stated, and that it was not left optional with the parties, or either of them, as to whether this contract should be complied with. We have no doubt that the contract was not unilateral, and therefore overrule this contention made by appellants.

[8, 9] Appellants advance under these assignments the further proposition that the contract between the parties was null and void, and incapable of specific performance because it wholly failed to describe the timber to be cupped under the contract or the land upon which it was growing, and that for this reason the breach of the contract could not be made the basis of this suit for damages. And in this connection, they further contend, that even if the contract could, by proper averments in the petition as to the description of the timber or land upon which it was growing, be made the basis of a suit for damages for its breach, that, nevertheless, the averments of the petition in connection with the contract on this point were wholly insufficient to describe the timber to be cupped and therefore the judgment is without support on this point. In this connection, counsel for appellants would invoke the strict rule of description which applies to contracts for the sale and conveyance of real estate or the timber growing thereon, and have cited numerous authorities, which, if applicable to the contract in this case, would sustain appellants' contention that the description of the timber to be cupped as contained in the contract is wholly insufficient to warrant specific performance, or, perhaps, damages for its breach; but these authorities have no application, we think, to the contract here under construction. The contract between the parties in this case is not one for the sale of land or the timber growing thereon, or for any interest in either. It is simply an agreement between the parties to the effect that the Saner-Ragley Lumber Company, for a stated consideration to be paid by Spivey, is to permit him, upon the terms and conditions therein stated, to cup the pine timber on a tract of land then owned by the Saner-Ragley Lumber Company, and it was not intended by the parties to pass any interest in the land or the timber to Spivey or to incumber either, but merely to permit Spivey, for the consideration which he agreed to pay therefor, to take the fruits, namely the turpentine, of this pine timber for the period of time and upon the conditions stated in the contract. The averments of the petition clearly show this, and it is further averred that the land upon which the timber contracted for was grow-

ing was a tract of 10,700 acres in Polk county, Tex., then owned by the Saner-Ragley Lumber Company. Such being the nature of the contract between the parties, we think that the contract itself, as far as it was written, was not void for lack of description of the timber to be cupped, and that it was permissible, under the contract and averments of the petition touching the description, to admit proof of the tract or tracts of land and timber that the parties had in contemplation at the time the contract was made. No useful purpose would be served by a more lengthy discussion of this point.

[10-12] We think that none of the contentions made by appellants under their first six assignments of error can be sustained, and they are all overruled. We also overrule, without further mention or discussion, all other assignments of error contained in appellants' brief, save those which we shall hereinafter specifically mention. By several of the remaining assignments, it is contended that the evidence adduced upon the trial by the plaintiffs was not sufficient, under the pleadings, to warrant the judgment in this case against appellants, which, as we have shown, was for $75,000. Counsel for appellees at this point advance two propositions, either of which, if correct and should be sustained by this court, would necessarily overrule these assignments of error. The first proposition in this connection advanced by counsel for appellees is, in substance, that the judgment in this case is a judgment by nihil dicit, and is equivalent to a judgment by confession, and that all errors committed, if any there were, were waived, and that this court cannot review the sufficiency of the evidence to sustain the judgment in any respect. The other counterproposition is, in substance, that if the judgment in question be only one by default, that, nevertheless, the sufficiency of the evidence to support it cannot be questioned in this court, because the default amounts to an admission by appellants of their liability to appellees in the full amount recovered. It might have been well to have disposed of these counterpropositions in the beginning, but, after consideration, we thought best to discuss them in connection with the assignments now under consideration.

We have shown above that the only answer ever filed by appellants in this case was their plea of privilege, the disposition of which we have stated. Able counsel for appellees contend that the filing of the plea of privilege and the failure to further plead to the merits by appellants, amounted to a confession by appellants that the appellees were entitled to recover in this case the full amount of $75,000, as sued for, and was a waiver of all errors, if any, committed upon the trial. Their second counterproposition in this connection is that, if the judgment rendered in this cause be only one by de-

fault, nevertheless appellants' default admitted the right of appellees to recover the full amount sued for, as they did recover, and that the sufficiency of the evidence to warrant the amount of the judgment cannot be reviewed by this court, and that all errors committed upon the trial were waived. In support of their counterproposition that the judgment in this case is one by nihil dicit, and that appellants are precluded from questioning the judgment in any respect or upon any ground, save that the petition was subject to general demurrer, counsel for appellees cite in their brief the following Texas authorities: Cartwright v. Roff, 1 Tex. 81; Gilder v. McIntyre, 29 Tex. 91; Storey v. Nichols, 22 Tex. 87; Graves et al. v. Cameron et al., 77 Tex. 273, 14 S. W. 59; Early & Clement Grain Co. v. Fite (Tex. Civ. App.) 147 S. W. 674. We will proceed to analyze these authorities and determine whether they support this counterproposition.

In Cartwright v. Roff, the defendant was sued as indorser of a promissory note, and judgment went against him by default. The judgment was afterwards set aside, and defendant permitted to file an answer to the merits, but, after filing the answer to the merits, he voluntarily withdrew it, and thereupon judgment was rendered against him for the full amount of the note, and he then appealed, assigning certain errors for reversal. It was held, Judge Lipscomb rendering the opinion, that under the facts of that case, the judgment was one by nihil dicit, and, in law, amounted to a confession of judgment.

In Gilder v. McIntyre, the defendant, with another, was sued on a promissory note, and after having answered to the merits, withdrew his answer, and judgment was rendered against him as prayed by the plaintiff. The defendant appealed and sought to reverse the judgment, because of defects in the petition. It was held that the petition was sufficient wherein assailed, but if not, that the withdrawal by defendant of his answer to the merits was a waiver of the claimed defect in the petition, and that the judgment should be treated as being one by confession.

In Storey v. Nichols, the defendant was sued on a note in the capacity of trustee for another, and, after having answered to the merits, withdrew his answer, and judgment was rendered against him in his individual capacity. He appealed and assigned error on the ground that the judgment against him as an individual was without support in the pleading of the plaintiff, and this assignment was sustained. The appellee contended that appellant had waived the error by withdrawing his answer, making the judgment one by nihil dicit, which he contended was equivalent to confession, but in that case the assignment was sustained. We will mention this case hereinafter.

In Graves v. Cameron, the defendant was

sued on a promissory note, and, after having answered to the merits, withdrew his answer, and judgment was rendered against him for the amount sued for, and he appealed, attacking the judgment as not supported by the evidence. Judge Acker, of the Commission of Appeals, in disposing of the case, held that the judgment was one by nihil dicit, because the defendant withdrew his answer to the merits after having filed it, and that such action on his part was an implied admission or confession that plaintiff was entitled to the judgment on the note as prayed.

In Early & Clement Grain Co. v. Fite, the plaintiff sued two different sets of defendants for damages, which he claimed he sustained because of their sale and delivery to him of damaged and unmarketable grain. One set of defendants, Early & Clement Grain Company, filed a plea of privilege to be sued in the county of their domicile. One of the other defendants, after answering to the plaintiff's petition, filed a cross-action against their codefendant, Early & Clement Grain Company, after their plea of privilege had been filed, and no citation was issued to Early & Clement Grain Company on such cross-action. Early & Clement Grain Company never at any time filed any answer to the merits, either as to the plaintiff's petition or the cross-action. The case proceeded to trial, and the plaintiff recovered judgment against all defendants, and the defendants who filed the cross-action against Early & Clement Grain Company recovered judgment against them as prayed, and Early & Clement Grain Company appealed, assigning errors against the judgment as a whole.

We gather from the opinion of the Amarillo Court of Civil Appeals, speaking through Justice Presler, then a member of that court, that the appellants were present in the trial court and presented their plea of privilege and heard it overruled, and that the case was then called for trial on its merits, but that appellants declined to make any further answer. They also declined to make a motion to set the judgment aside or to have it corrected or revised in any way. Upon such state of facts, the Amarillo court held that the judgment was not one by default merely, but was a judgment by nihil dicit, and amounted to a confession by appellants that judgment should be rendered against them, as was done.

Judge Presler cited as authorities supporting his conclusion that the judgment was one by nihil dicit, and amounted to a confession, Santa Fé, etc., Land & Trust Co. v. Cumley, 62 Tex. Civ. App. 306, 132 S. W. 889, and York v. State, 73 Tex. 651, 11 S. W. 869. We have carefully read both of the cited cases, and will now proceed to show what the point was before the court in those cases, and what was decided in each of them.

In the Cumley Case, the plaintiff sued the

defendant on a debt for $1,880, evidenced by a written due bill, and the defendant filed a plea of privilege to be sued in the county of his domicile, which plea the trial court sustained and ordered the venue changed. The plaintiff gave notice of appeal, but never did perfect it. The clerk of the court made up a transcript, etc., and sent it to the court to which the venue was changed, as he was required to do by the statute. The defendant never filed at any time any answer to the merits, and his only pleading in the case consisted of his verified plea of privilege. After the cause had been placed on the docket in the court to which the venue had been changed, the plaintiff went into court and asked for a judgment for his debt, as evidenced by his written due bill, and judgment was awarded him accordingly. The defendant appealed, and one of his assignments attacks the judgment on the ground that the citation was so defective that it would not support the judgment against him. The Court of Civil Appeals for the Second district, speaking through Justice Speer, after holding that the judgment was one by default, and saying nothing about a nihil dicit judgment, disposed of appellant's contention in these words:

"The ground of attack set out in the first and second assignments of error is predicated upon the alleged insufficiency of the citation issued by the clerk of the district court of Midland county. But, whatever the defects in that writ, they must be held to have been waived when the defendants filed their answer in that court. It is true the answer consisted alone of a verified plea of privilege, but it in no way limited the appearance to the purpose of urging this plea, and, if it did, the effect would probably not be different, since the object of a writ of citation is to give notice to the defendant, and it is well settled, both by statute and decision, that the filing of an answer constitutes an appearance for the defendant, so as to dispense with the necessity for the issuance or service of citation upon him"—citing York v. State, supra.

As we construe the Cumley Case, we fail to see that it is authority for the holding by Judge Presler in the Early & Clement Grain Company Case that the judgment in that case was one by nihil dicit, and amounted to a confession, simply because a plea of privilege had been filed by the defendant, which had been overruled by the court, and the defendant filed no further answer. As we have shown, Judge Speer expressly held in the Cumley Case that the judgment was only a default judgment, although the defendant there had filed a plea of privilege, and all that was decided in the Cumley Case was that a defendant, who appears after being served with citation, however defective, and files a plea of privilege, may not thereafter question the sufficiency of the citation that was served upon him, and that his appearance and filing of the plea of privilege was an appearance for all purposes, so as to give the court jurisdiction over his person.

York v. State was a suit by the state of Texas against F. B. York in the district court of Travis county, Tex., in which the state, as plaintiff, sought to recover a money judgment against York on a lease contract, by which the state had leased to York certain lands, and York had not paid the state for the lease, according to the contract. York was not a resident of Texas, but resided in the state of Missouri. He was cited by personal notice in the state of Missouri, in accordance with the Texas statute for citation to nonresidents. York voluntarily appeared before the Travis county district court, and filed a plea to the jurisdiction of that court to render a personal judgment against him on such character of service as was had upon him, invoking the rule announced in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. His plea was overruled, to which he excepted, and expressly declined to file any further plea or answer, and judgment was rendered against him for the debt due the plaintiff, and York appealed, attacking the judgment on the ground that the trial court never acquired jurisdiction to render the personal judgment against him, and that contention was not sustained. The court, speaking through Chief Justice Stayton, held that York, by appearing and filing his plea to the jurisdiction of the court, thereby submitted himself to the court's jurisdiction under the Texas statutes, and that the jurisdiction thus acquired was as full and complete as if York had been duly served with citation in the state of Texas. Nothing else was involved in the case, and nothing else was decided by the court. Judge Stayton never said a word about a nihil dicit judgment or judgment by confession, and, doubtless, no such character of judgment entered his mind. The question in the York Case was as to whether the court rendering the judgment had acquired jurisdiction to do so, and all the court held was that, notwithstanding the rule announced by the Supreme Court of the United States in Pennoyer v. Neff, York, by voluntarily appearing in the district court of Travis county and filing his plea to its jurisdiction, under the statutes of Texas, thereby gave the court jurisdiction to render a personal judgment against him, and that this jurisdiction was as full and complete as if York had been duly and legally served with citation in the state of Texas.

It is our conclusion, and we think it ought to appear at a glance, that neither the Cumley Case nor the York Case cited by Judge Presler sustains him on the point now under consideration. It may be that Judge Presler was actuated largely in reaching his conclusion in that case by the fact that the defendant who filed the plea of privilege was

present and presented it in court and heard it overruled, and expressly declined to plead further to the merits, and also declined, as the opinion states, to make any motion to set the judgment aside or to have it revised in any manner. The opinion shows all this, and we say it may be that Judge Presler was influenced to some extent, at least, by these facts. If, however, it was intended by the court to hold in that case that the filing of a plea of privilege by a defendant and a mere failure to further answer to the merits of the plaintiff's case amounts to a confession of judgment in favor of the plaintiff, as prayed for, and precludes all inquiry on appeal as to the correctness of the judgment, we must respectfully decline to follow such decision. We are convinced that Judge Presler was wrong in his conclusion on this point, as he was on another point in that case, as pointed out by the Fort Worth Court of Civil Appeals in Mallory v. Russell, 242 S. W. 1113, on which point the Fort Worth Court held that Judge Presler's decision was in conflict with the Supreme Court of this state, and could not be followed by them.

We do not think that Cartwright v. Roff, Gilder v. McIntyre, Storey v. Nichols, or Graves v. Cameron, supra, support the contention of the appellees that the judgment in this case is one by nihil dicit and amounts to a judgment by confession. We think that a careful reading of the opinion in each of those cases will leave no reasonable doubt in the legal mind that the court, in characterizing the judgment in each of them as one by nihil dicit or confession, does so because of the action of the defendant in voluntarily withdrawing his answer to the merits after he had filed it. Such action on the part of the defendant in each of those cases was construed, and treated by the court as an implied admission and confession that the plaintiff was entitled to recover the full amount of the liquidated demand made the basis of the suit. But the able counsel for the appellees in this case does not agree with us in this construction of the court's opinion in those cases, and insists that the voluntary withdrawal by defendant of his answer to the merits in each of those cases was not a controlling fact with the court in holding the judgment to be one by nihil dicit or implied confession. If counsel is correct in this, then why did the court, in each of those cases, seem to lay stress upon the fact that the defendant, after filing his answer to the merits, withdrew it and declined to make further answer? Let us quote briefly on the point:

Cartwright v. Roff, the court speaking through Judge Lipscomb:

"But let it be conceded that the petition is bad, and that it could not have been sustained if objected to below, or even would have been reversed on error, if there had been no appearance by the defendant in the district court;

we will inquire whether those defects have not been cured and waived, by what appears on the record. What then is the legal presumption to be deduced from the judgment by nil dicit? It has been held by the Supreme Court of Alabama, with much good reason it seems to me, 'that the *withdrawal of a plea* admits the cause of action and waives all irregularities in the declaration, and will even cure the want of a declaration.' 6 Porter, 358. * * * The entry of the judgment shows the presence of the defendant; that he *voluntarily withdrew his defense,* and says nothing in bar or preclusion of the plaintiff's action. To admit him, after all this, to insist on matters that would have been available if not waived and abandoned by him—I say, to admit him to do this, would be to pervert the rules of law, to the destruction of right, instead of adapting them to the ends of justice. Indeed it may be well questioned if the ends of justice have been ever advanced by permitting a party, after having *appeared and made,* or *expressly declined making* a defense in the court below, to set up a defense he could have so made then and there, in an appellate tribunal." (Italics ours.)

Gilder v. McIntyre:

"The judgment recites the fact that the defendants below *withdrew their pleas and made no further defense to the plaintiff's cause of action.*" (Italics ours.)

The court then proceeds to state that the judgment was attacked on the ground of defects in the plaintiff's petition, and reaches the conclusion that the petition was not defective as claimed. And then proceeding further, the court said:

"But if this were regarded as a defective statement of the cause of action, the *withdrawal of the defendant's answer* [italics ours] amounts to a judgment nihil dicit, which is regarded as a species of judgment by confession, and carries with it more strongly the admission of the justice of the plaintiff's cause of action (and will operate as a waiver of more errors) than a judgment by default." Storey v. Nichols.

In this case, Judge Roberts states what the legal effect of a default judgment is and mentions some of the features which distinguish it from a judgment by nihil dicit, and says that the latter amounts only to an implied and not an express confession of judgment, and cites several authorities to sustain his views. He then continues:

"In all these cases, it is maintained that a judgment by nihil dicit is in the nature of a judgment by confession, and that the *withdrawing the* pleas, [italics ours] is a virtual waiver of errors."

Further on he says:

"From the very fact that it is a confession, not declared, but presumed from the act of the party in *withdrawing* his *pleas,* [italics ours] it cannot be entirely of equal conclusiveness, and coextensive with a full expressed confession of judgment."

And near the conclusion of the opinion he again says:

"The conclusion then is that the *withdrawing* of the *pleas* [italics ours] is an implied confession of judgment, having reference to the cause of action stated, or attempted to be stated, in the petition; tantamount to an express confession of judgment only, which does not state the amount and terms of the judgment, and liable to be partially curtailed and qualified by facts in the record, which raise a rebutting presumption."

Graves v. Cameron, Judge Acker speaking:

"If there could be any doubt, however, of correctness the conclusion just announced, the judgment must nevertheless be affirmed, for 'the *withdrawal* [italics ours] of the defendant's answer amounts to a judgment nihil dicit, which is regarded as a species of judgment by confession.'"

Again, at the very conclusion of the opinion the court says:

"So it is clear that the *withdrawal* [italics ours] of the answer was a confession of the cause of action as stated in the petition [suit on note], and no proof of it was therefore necessary."

We think it is clear and needs no further argument or demonstration at our hands that in each of the cases just quoted from, the fact that the defendant had answered to the merits of the plaintiff's suit, which, in each instance, was based upon a liquidated demand, and then voluntarily withdrew his answer, had a controlling effect with the court in reaching its decision that the judgment was one by nihil dicit and amounted to an implied confession by the defendant that the plaintiff was entitled to recover the whole of such liquidated demand. It is our conclusion that none of these Texas cases cited by appellees in support of the counter proposition now under consideration sustain their contention that the judgment in this case is one by nihil dicit, and based upon an implied confession by appellants that the appellees were entitled to recover the full amount sued for by them, unless it be the opinion of the Amarillo court, speaking through Judge Presler in Early & Clement Grain Company v. Fite. If that case supports appellees' contention on this point, considering the facts upon which it is based, as we have pointed them out, it stands alone in Texas, in so far as anything cited by counsel in his brief reflects, and also in so far as we have been able to find after long and diligent search. And since no sound reason, in our opinion, is given by Judge Presler for the holding as it appears to be in that case, and since the authorities he cites in support of his holding do not sustain him or touch the point, we must decline to follow the views there expressed.

We have given the point now under discussion long and thorough consideration, and we can see no reason for the contention that the action of the appellants in this case amounted to an implied confession on their part that the appellees were entitled to recover the full amount of their unliquidated demand of $75,000, and should therefore not be heard to complain of the judgment upon any ground. They are not complaining of any lack of jurisdiction on the part of the trial court to render the judgment, for that was acquired by the district court of Jefferson county when the citation was served upon them, and that jurisdiction was only defeated by appellants' plea of privilege; and when the venue was changed, and the cause was filed in the district court of Polk county, that court acquired jurisdiction by the transfer of the cause, and was fully authorized to proceed to judgment, as it did. But what fact is there in this record that could indicate that appellants confessed that the appellees were entitled to recover the judgment awarded them? In filing their plea of privilege in the district court of Jefferson county, appellants did only that which the statute of this state gave them a right to do, and filed no answer to the merits then or at any other time, and therefore had no answer to withdraw. The judgment in the case expressly recites that appellants were not present when the case was called for trial, and therefore negatives any presumption that they knew the case was then to proceed to trial, and that they declined to make further answer to the plaintiffs' petition; and the record shows, without dispute, that the first notice appellants had that the judgment had been rendered against them was after the court had adjourned, and therefore they were not in a position to make a motion to set the judgment aside, and their only remedy was that by writ of error, which they have pursued. Upon the whole, we see nothing in this record to indicate any implied confession or admission by appellants that the judgment in this cause should be rendered against them, and we therefore hold that the judgment is not one by nihil dicit, as contended by appellees, and that in Texas the legal effect of the judgment in this case is no greater than that of the ordinary judgment by default, with this exception: Appellants having appeared by their plea of privilege, could not, if they desired, question the sufficiency of the citation served upon them, as they could in the case of an ordinary default judgment. In reaching this conclusion, we are not unmindful of the decisions in some other jurisdictions, based, in most instances, upon their statutes, that the judgment in this case, under the facts, would be conclusive, whether it be called a nihil dicit judgment or judgment by default.

Next we will briefly dispose of appellees' contention that even if the judgment be one by default only, appellants cannot question, in this court, the sufficiency of the evidence to sustain it. On this point, counsel for ap-

pellees contend that a default judgment always admits the cause of action made by the plaintiff's petition, and contend further in this case that the judgment cannot be questioned as to the amount, on the ground of the sufficiency of the evidence to support it. We have already shown that appellees' cause of action is based upon an unliquidated demand for damages, and while we agree with counsel for appellees that the general rule is, in Texas as elsewhere, that a default judgment is held to admit the cause of action against the defendant, as pleaded by the plaintiff, yet where the suit is upon an unliquidated and uncertain demand for damages, as in this case, the default judgment does not admit, in Texas, that the plaintiff is entitled to recover the full amount sued for by the plaintiff to the extent of precluding the defendant, on appeal or by writ of error, from attacking the amount of the judgment. The able and energetic counsel for appellees have cited no opinion of the Supreme Court of this state to the contrary of our view on this point, and we have been unable to find any; and, believing that there is no sound reason for the appellees' contention on this point, we hold that the judgment in this case may be attacked upon the ground of insufficient evidence to support it, and will now proceed to consider and dispose of appellants' contention that the judgment for $75,000 against them is not supported by the evidence.

As we have shown hereinbefore, the damages claimed consisted of two items, one of $10,000 and the other of $65,000. The $10,000 item, as shown by the petition, is claimed for the loss of a year's work in the turpentine business by Spivey, and "great expense" which he incurred in tearing down and removing his camp from Voth in Jefferson county, preparatory to commencing operations for turpentine on appellants' timber in Polk county. The $65,000 item of damages, as claimed in the petition, is for loss of profits that Spivey would have made had the contract not been breached by appellants. The court after hearing the evidence adduced, rendered judgment for the aggregate amount of damages claimed.

The statement of facts which accompanies the otherwise voluminous record in this case is quite brief, and is a statement prepared and certified by the trial judge himself, the parties being unable to agree upon a statement of facts. That there may be no misunderstanding as to what the evidence was upon which the trial court based this judgment, we shall copy the evidence in full of the three witnesses who testified for appellees upon the trial. The statement of facts shows first that the appellees offered in evidence the contract, the claimed breach of which was made the basis of the suit. They then proved that the appellees here (substi-

tuted plaintiffs below), were the heirs of J. H. Spivey, and therefore entitled to prosecute this suit. As to the extent of the damages alleged to have been sustained by breach of the contract, the following evidence was introduced:

W. H. Spivey testified as follows:

"I have been over this 10,700-acre tract or this timber belonging to the Saner-Ragley Lumber Company. I am an experienced turpentine man. At the least conservative estimate this land will hang 100 cups to the acre. The turpentine privileges on that timber, beginning in the spring of 1915 up to this time per cup for two years was worth not less than 20 cents per cup, and has been worth that at least since this contract. It will bring more than that now. That would leave a profit for operation at that price, a very nice profit."

M. T. Kelley testified:

"I am familiar with this timber that Spivey had a contract to turpentine on the Saner-Ragley Lumber Company known as the Bemis 10,700 acres, and I know something about that contract of Spivey's. I have been over that, and estimated the number of cups it will hand, and it will average 100 cups or more per acre. Two years' turpentine privileges on that timber was worth 20 cents per cup beginning with the season of 1915. It has at least been worth that much, and that will leave a profit in the operation of it."

E. G. Gay testified:

"I am an experienced turpentine man. I was interested with Mr. Spivey and he spoke to me or had connection with me in regard to this contract entered into with the Saner-Ragley Lumber Company to turpentine on 10,700 acres out there. I am familiar with the tract and it contained about that amount. I know that Mr. Spivey tendered the first payment called for in the contract in money, as I saw him do it. I was present when he tendered it to Mr. Ragley, of the Saner-Ragley Lumber Company, and he refused to receive it. He refused to allow Mr. Spivey to perform his contract. At that time Mr. Spivey was in condition and financially able to perform his contract. I know that he made arrangements—financial arrangements. I was interested to the extent of seeing he was able as I was financing him. At that time, which was the spring of 1915, I know that Mr. Spivey had broken up his old turpentine camp, and was prepared to go to work on this. He had made arrangements to move from the old camp, and I think sold out his entire holdings to move. At the time the contract was breached by the Saner-Ragley Lumber Company, it looked like a good proposition for turpentine, as I recall, during that year. He practically lost that season's turpentine. The intrinsic market value of the turpentine privileges for two years beginning with 1915 under that contract per cup was easily worth 20 cents per cup for two years, and worth a good deal more than that. As to whether I know it is a fact or not, he is offered a large sum of money for this turpentine privilege on this timber while Spivey was still trying to let him go ahead with the contract,

well, not that first season I don't know, but the latter season, the season following I know he was offered more. Spivey was an experienced operator, and good turpentine man."

At this point of the witness' evidence, the trial judge asked this question, "What are you suing for in this case?" to which Mr. Parker, who was the attorney trying the case for the plaintiffs, answered:

"$75,000, $65,000 alleged as value of the contract, and $10,000 special damages as loss of a year from his business on account of contract being breached too late to operate anywhere else that year."

And thereupon the court propounded this further question:

"Mr. Gay (to witness): Have you figured this out, and are you sure he was damaged the full amount as claimed, $75,000?"

"My Gay: Yes, sir; and more, at least $100,-000."

It was upon this evidence, as we have quoted it in full, that the court awarded to the appellees a judgment of $75,000, which is the aggregate of the two items claimed by them, as shown above. As to the item of $10,000 damages, we fail to see in this evidence the statement of a single fact from which the trial court might reasonably arrive at the conclusion that that item of damage was sustained as claimed. It is alleged in the petition, as we have shown, as to this item that it consisted partly of the "great expense" in tearing down by Spivey of his camp at Voth, and making preparations to remove to Polk county, but there is not a fact stated by any of the witnesses in connection with this matter to show what amount of expense, if any, was so incurred by Spivey.

In this connection, it is shown by the witness Gay that Spivey sold out his entire holdings at Voth, but what he received for his holdings there, that is to say, whether he got less than their value, or whether he made a large profit by the sale, is not shown by any fact stated by the witness, nor is any fact stated by the witness from which the court could, in our opinion, arrive at any reasonable and just conclusion as to how much damages, if any, was sustained by Spivey as claimed in this $10,000 item. As to the $65,000 item, lost profits that Spivey would have made but for the breach of the contract, the evidence of the witnesses leave it equally as uncertain and indefinite and unsatisfactory as it does that claimed under the $10,000 item. We fail to see how the trial court was able, from any fact or facts stated by the witnesses on the point, to arrive at any satisfactory conclusion that Spivey sustained a net loss of $65,000, as profits that he would have made had he been permitted to operate under the contract, as claimed by him. Therefore we are constrained to hold that the evidence in this case, as we have quoted it, was so meager, so indefinite, and so uncertain as to either of the items of damages claimed, and as to the aggregate, that the assignment attacking the judgment of the trial court on that ground ought to be and is sustained. True, in answer to a question by the court, as we have shown, the witness Gay gave his conclusion that Spivey was damaged $75,000 and more, the witness saying at least $100,000, but we are talking about facts, and not mere general conclusions. A judgment for $75,000 is not an insignificant sum of money, and when a court renders a judgment against a party litigant for such a sum of money as that, the court ought to be able to point out the facts justifying the rendition of such a judgment. We do not mean to hold that this judgment ought to be reversed because the witness Gay was permitted to state merely his conclusion that the appellees were damaged to the extent of $75,000 and more, but what we mean to say is that his conclusion to that effect, when so large an amount of money is involved as this judgment awards against appellants, and rendered against them in their absence, the facts upon which such a judgment is rendered, and not conclusions, ought to show with reasonable definiteness and certainty that such damages, at least approximately, were sustained.

[13] We are not unmindful, either, of the rule that where there is any evidence to support a verdict of a jury or judgment of a trial court on a question of fact, the appellate courts will not usually disturb it. The rule is usually applied in cases that have been contested in the trial court where the facts upon which the verdict and judgment rest are stated pro and con, and the jury or court trying the case have confronted the witnesses, and observed their manner of testifying, passed upon their credibility, etc. In such instances, the jury or court trying the issue of fact have passed, not only upon the credibility of the witnesses, but have given such weight to the facts testified to by the witnesses as was deemed proper; and, therefore, to put an end to litigation, the appellate courts have adopted the rule that where the verdict or judgment has a reasonable support in the evidence adduced, it will not be disturbed by the appellate court. But here facts are lacking, and the only basis for the judgment in this case in the full amount as claimed by the plaintiffs on an unliquidated demand for damages is, as we see it, the conclusion of the witness Gay that Spivey was damaged to that extent. We therefore hold that the evidence adduced under the petition for damages in this case is so indefinite, uncertain, inconclusive, and unsatisfactory, that the large judgment against appellants in this case ought not to be permitted to stand, and we sustain such

of appellants' assignments of error as challenge it on that ground.

[14, 15] Counsel for appellants have also suggested fundamental error in this: The judgment, as we have already stated, is against the Saner-Ragley Lumber Company, a corporation, and W. G. Ragley, individually, jointly, and severally, for the full amount sued for. It is contended by counsel for appellants that appellees' petition cannot afford the basis of such a judgment, because, as they contend, the appellees sought to bind the Saner-Ragley Lumber Company on the theory that W. G. Ragley was authorized by it to execute the contract on its behalf, and that, according to the petition, construed as a whole, W. G. Ragley, individually, was only sought to be held liable in the event it should be determined that he did not have authority to act for the Saner-Ragley Lumber Company, as he purported to do in executing the contract, and that, therefore, the judgment, read in the light of the plaintiffs' petition, is contradictory, and has no basis in the pleadings. We have given this contention careful consideration, and have reached the conclusion that it was not the intention of the pleader to assert liability for the breach of the contract here in question against W. G. Ragley, individually, except in the event that it should be determined that he did not have authority to act for and bind the Saner-Ragley Lumber Company, whereas the judgment binds both the Saner-Ragley Lumber Company and W. G. Ragley, individually. As will be seen from the petition, which we have already quoted, it is alleged in one of the paragraphs, substantially, that both the Saner-Ragley Lumber Company and W. G. Ragley caused the contract with Spivey to be breached, and counsel for appellees, in answer to this suggestion of fundamental error, argue that such allegation was a sufficient averment of liability against W. G. Ragley, individually, to afford a basis for the judgment as rendered, and that it was really the intention of the pleader, to be gathered from the petition as a whole, that such liability was intended to be averred and asserted. It is a general rule of pleading that general allegations are controlled by special allegations touching the same material facts, and the petition should be construed as a whole. Applying both these rules, it is our conclusion that it was the intention of the pleader, in drawing the appellees' petition, to assert and claim liability against W. G. Ragley, individually, in the alternative; that is, in the event only that it should be ascertained upon the trial that he did not have authority when he made the contract with Spivey to bind the Saner-Ragley Lumber Company, as he purported to do.

[16] Now the judgment declares, in effect, that he did have authority to bind the Saner-Ragley Lumber Company in making the contract with Spivey, and it also declares that he is liable individually. If our construction of the petition as to the intention of the pleader be correct, it is clear that the judgment is not supported by the pleading, and is inconsistent in terms, and cannot stand as to both defendants. It is contended, however, by counsel for appellees, that if for any reason the judgment cannot stand as against W. G. Ragley, nevertheless it may be reversed or corrected as to him, and yet affirmed as to the Saner-Ragley Lumber Company. Under the state of the evidence as we find it in the record and have quoted it in this opinion, we have serious doubts whether we would be authorized to reverse or correct the judgment as to W. G. Ragley, individually, and permit it to stand as to the Saner-Ragley Lumber · Company. We therefore sustain the suggestion of fundamental error on this point, and hold that the judgment should be reversed, and the cause remanded for this, as well as because of the insufficiency of the evidence to sustain the judgment, as we have heretofore pointed out.

It is therefore the judgment of this court that the judgment of the trial court be reversed, and the cause be remanded.